BALLENTINE v. HAMMOND. ·

1. APPEAL will not be dismissed for *inadvertent* failure to incorporate in "Case" fact of entry of judgment.
2. CHARGE.—Judge should not charge upon request as the law statute law declared by this Court unconstitutional.
3. IBID.—Statement in charge of alleged facts in issue is charge on facts, and whether or not jury would have found a verdict as they did without such charge, it is error.
4. WATERS—SURFACE WATER—FLOOD WATERS.—Lower riparian owner cannot fight off flood waters of a stream after it has left its natural channel as he can surface water.
5. CHARGE.—An instruction that the jury should find for defendant, unless they find a certain obstruction caused the damage complained of, without reference to other obstructions alleged by plaintiff to also be the cause of the damage, is error.

Before TOWNSEND, J., Anderson, fall term, 1901. Reversed.

Action by Elizabeth Ballentine against W. Q. Hammond. From judgment for defendant, plaintiff appeals.

Motion upon one day's notice was made in this case to amend the "Case" by inserting the fact that judgment had been entered up.   Respondent resisted on the ground that four days' notice was necessary. Appellant contended that the omission in case was inadvertent and only recently noticed.

The Court held that the case should not be dismissed for failure to give the required notice or to insert said fact, but that it would be continued unless parties could agree as to the proposed amendment.   It was agreed that amendment should be made.

*Mr. B. F. Martin,* for appellant, cites: *Law as to surface water:* 24 Ency., 1 ed., 917; 15 Q. B., 643; 61 S. C., 548; 54 S. C., 242; 39 S. C., 472.   *Rule as to water courses:* Gould on Waters, 3 ed., 204, 265; 46 S. C., 23; 26 S. C., 480; 11 Rich. L., 162; 2 Hill L., 639; 61 S. C., 548; 54 S. C., 242; 39 S. C., 472; 15 L. R. A., 630; 24 Ency., 1 ed., 920-1; 21 L. R. A., 593; 27 L. R. A., 764; 25 L. R. A., 527; 108 Mass., 211.

*Messrs. Tribble & Prince* and *Bonham & Watkins,* contra.   *Mr. Tribble* cites: *As to rights of upper riparian owner:* 21 L. R. A., 593; 27 A. R., 717; 36 S. C., 93.   *Surface water is common enemy:* 61 S. C., 551; 54 S. C., 242. *As to sand:* 26 S. C., 480.

*Messrs. Bonham & Watkins* cite: *Appeal will not be entertained unless "Case" shows entry of judgment:* 63 S. C., 123, 310; 59 S. C., 557.

March 4, 1904.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.   This action was begun on May 27, 1901, and it was tried before Judge Townsend and a jury at the fall term, 1901.   While two causes of action were set out in the complaint, only one was actually tried,

the other being abandoned. The following is the statement of the cause of action retained:

"1. The plaintiff is, and at the time hereinafter mentioned was, the owner of the freehold and in possession of certain lands lying along the banks of Little Beaver Dam Creek, in county and State aforesaid.

"2. During the summer of 1898, the defendant, without the consent of plaintiff, built a rock dam in the channel of said creek on his freehold, a short distance below said land of plaintiff; at a subsequent date, without consent of plaintiff, he added to said dam, and he has also built levees to a considerable height, running from points in defendant's bottoms on each side of said creek to said creek near the dam and thence down the stream.

"3. Said dam at first was about two and a half feet in height, and after the addition it was about four and a half feet in height, very thick and constructed of large heavy rock. It remained at that height until the defendant, as plaintiff is informed and believes, had heard of preliminary steps being taken by plaintiff and other parties to bring suit to have it removed; then defendant took off about a foot of said dam, but he continues to maintain said dam and levees.

"4. By reason of the erection and maintenance of said dam and levees the channel of said creek became blocked and filled with sand for a long distance above said structure, the fall of plaintiff's bottom ditches and creek channel was lost and destroyed, and plaintiff's drainage obstructed and clogged, so that slight freshets and ordinary rains overflowed and overflows a large part of plaintiff's land and cover a part of it with sand, rendering it wet, soggy and unfit for cultivation and pasture, whereas before it was adapted to both. This permanently damaged part of plaintiff's land, and caused loss of returns and profits therefrom and depreciation in value.

"5. The defendant, well knowing that these structures would injure plaintiff as above set forth, deliberately, wantonly, wilfully and in reckless disregard of plaintiff's rights,

erected and maintained, and still maintains, the above described nuisance, notwithstanding the fact that on the day of April, 1899, he was given notice, signed by plaintiff and eight others, that signers were being damaged thereby, as hereinabove set forth; all to plaintiff's damage seven hundred and fifty dollars.

"Wherefore, plaintiff prays judgment against defendant for the sum of seven hundred and fifty dollars and costs of this action, for abatement of said nuisance, and permanent injunction against the maintenance thereof."

Defendant in his answer admits having built the levees on his own premises to prevent high waters from flooding his bottom lands; that having gone to great expense in cutting canals to convey water through and from his bottom land on said creek, he placed rock there to obstruct the sand from being washed into said canals, but he denies that said obstruction of rocks raised the bed of the original channel of said creek any higher than it was when he began said work.

For a further defense, he says: "That prior to the time alleged in said complaint, the defendant owned considerable land on said creek; that said lands, as well as the lands immediately above defendant's, were practically worthless, in consequence of the waters having no certain channel, as it was shifted at nearly every high water; that this defendant at great expense dug canals to convey the water from his own premises, and cut said canals entirely on his own premises; that knowing the condition of the creek above, defendant placed bags of sand in the channel of the old run on his own premises to prevent the sand from being washed into his new canal, when some evil disposed person or persons, to defendant unknown, cut said bags of sand in defendant's absence, whereupon he placed rock to protect himself, and after thus protecting his canal, the old channel of the creek was not raised any higher than it was when defendant began his work; and he denies that plaintiff has any right to complain of any acts of the defendant in the premises.

"4. That by reason of the expense incurred, defendant has brought into cultivation valuable bottom lands, and but for said obstruction, the canals so cut by him would soon become choked with sand and render valueless for farming purposes said bottom lands.

"5. That before this suit and after the alleged notice, and at various times, defendant has offered to allow the plaintiff and other persons, owning bottom lands above him on the said creek, to enter his canal and take the same through their lands, provided they would take the proper steps to prevent the sand above from being brought in to fill up said canal, and he is still willing to allow them the benefit of said fall for said purpose.

"Wherefore, he demands that the complaint be dismissed."

Voluminous testimony was offered by each side to the controversy, plats of surveys, etc.    By consent of both parties, the jury were carried down to Little Beaver Dam Creek, and with a shower on each side inspected all the bottoms in question.

After a full hearing, the jury brought in a verdict for the defendant.    Thereupon the plaintiff appealed to this Court on the following exceptions:

"(1.) His Honor erred in charging in defendant's fifth request, 'That if the old channel would not have taken the sand down before Hammond cut his ditches, plaintiff has no right under the law to use the new ditch cut by Hammond to convey away her accumulated sand from above.' This is a charge on the facts, and is in violation of the Constitution of '95, art. IV., sec. 26.    It is clearly implied that Hammond cut a new ditch that plaintiff could use.    This was strongly controverted in the testimony and, *if true,* would properly and directly bear upon the question of injury or no injury.

"(2.) His Honor erred further, as a matter of law, in charging, 'That if the old channel would not have taken the sand down before Hammond cut his ditches, plaintiff has no right under the law to use the new ditch cut by Ham-

mond to convey away her accumulated sand from above.'
The testimony, convincing and undisputed, shows that the
accumulation was due to defendant's obstructing the stream;
and the law would be otherwise in cases where defendant
*himself causes* the accumulation in plaintiff's channel.  This
error is material and hurtful.

"(3.)  It was error to charge in defendant's fifth request,
'That if the jury find from the testimony that the old creek
channel, in the course of time, had become filled with sand
before our obstruction, until the natural flow of the stream
had spread out over the entire bottom, and had no certain
channel in which to flow, and Hammond, as a prudent and
thrifty farmer, saw proper to improve his own lands by cut-
ting ditches to convey this water off of his own lands below,
the fact that he stopped the ditch on his own land, and placed
a dam there to keep the water from washing from the origi-
nal channel the sand into the new ditch, does not give to
the plaintiff any right to damages.'  This is a charge upon
the facts, and in violation of the Constitution of '95, art. V.,
sec. 26.  It is distinctly assumed as a 'fact' that the defend-
ant put his dam in the stream 'to keep the water from
washing from the original channel the sand into the new
ditch.'  This is extremely misleading; the undisputed and
overwhelming evidence shows that it was not and could not
be true, that defendant's claim of 'new ditch' and 'acquired
fall' therefrom was baseless, for the obvious reason that he
had done no ditching on this stream when the dam and levees
were built.  Furthermore, this part of the charge leaves the ·
impression that defendant ditched up to a certain point·on
his land and there put in the dam; the evidence is altogether
otherwise.

"(4)  His Honor erred in charging defendant's fourth
request to charge, as follows: 'That the flood water of a river
or a creek may be fought as surface water, when it has left
its natural channel, and if the jury find from the testimony
in the case, that the embankments thrown up by Hammond
on his own land to obstruct the surface water with a view

to throwing it in the channel, and keep it from covering his own land, then he cannot be held liable in damages, unless the jury find from the testimony that Hammond did the work in a negligent manner, or that damage has resulted to the plaintiff from the natural and probable consequences of said acts. *Cairo, Vincennes & Ch. Rs. Co.* v. *Brevoort,* 62 Fed. Rep., 129, L. R. A., vol. 25, 527.' It is respectfully submitted that this is not the law; that the common law rule is otherwise; and that a man cannot build banks or levees to dam back upon, and to the injury of, his upper riparian neighbor, the flood water of ordinary, usual and expected freshets, flowing as nature intended it to flow. Furthermore, his purpose in constructing the embankments is not material, much less controlling, upon the question of liability for actual damages; and it was error so to charge.

"(5.) His Honor erred in charging upon defendant's third request, 'That he (Hammond) had a right under the law to dig a channel or ditch to collect the waters and convey them across his own land, and he was not bound to continue that ditch *with what fall he had acquired* to plaintiff's line.' This request contains a charge upon facts, and is in violation of the Constitution of '95, art. V., sec. 26. It is assumed and impliedly charged that Hammond had dug a ditch and thereby had acquired fall; this is denied, and is not shown but is disputed in the evidence; and it bears upon the question of damage.

"(6.) Because his Honor erred in charging defendant's third request to charge because it assumed that the dam or obstruction was in a new channel, and is, therefore, a charge on the facts, and in violation of the Constitution of '95, art. V., sec. 26. The fact assumed is denied and the evidence is all otherwise.

"(7.) Because his Honor erred in charging the jury as the law of this case (see defendant's third request), 'That before they can find in favor of plaintiff, they must be satisfied from the testimony in the case that the obstruction placed by Hammond in his ditch stopped the natural flow of water or

sand and caused it to back upon plaintiff's land.' For the jury could have found for plaintiff for injury caused by the levees or banks at right angles to the creek as well as for that caused by the obstruction in the stream.

"(8.) Because his Honor impliedly charged the jury in defendant's third request that the obstruction was in Hammond's ditch, whereas the evidence shows that it was built on the bed of the original creek channel. This is a charge on the facts, in violation of Constitution of '95, art. V., sec. 26.

"(9.) Because his Honor erred in refusing to read and charge upon plaintiff's request, sections 1273 and 1274, R. S. 1893, on the ground that they had no bearing on the case. In the evidence defendant made a strong point of the proof that the stream was filling up below the dam, seeking to show that the injury complained of would have resulted any way, from natural causes or causes other than the obstructions complained of; plaintiff sought to rebut this by proof of the existence of drifts below, as the real cause of the filling up, and by the presumption that, in obedience to the law as laid down in those sections, they would be removed, and thus this trouble, which bears forcibly on plaintiff's case, removed. Therefore, plaintiff's request should have been granted.

"(10.) His Honor erred in refusing to read and charge, upon plaintiff's request, General Statutes, XXIII., 448 (Acts 1900). Although plaintiff might have failed to convince the jury by the proper quantum of evidence that plaintiff had received injuries for which defendant was responsible, yet the effect of this statutory law would be in this to entitle plaintiff to a verdict for nominal damages and an order for the removal of the dam."

In considering and passing upon the exceptions, we will first pass upon 9 and 10. We hold that it was not the duty of the Circuit Judge to pass upon these exceptions, so far as he refused to do so. Sections 1273 and 1274 and 1275 of the Revised Statutes of this State, made in

the year 1893, have been declared unconstitutional (by this Court), and, therefore, the Circuit Judge made no mistake in refusing to charge the same to the jury.

So far as the fifth exception is concerned, we will pass upon that. Too much care cannot be exercised by Circuit Judges in the matter of their charges to juries in respect to matters of fact or testimony. The following is the text of the charge of the Circuit Judge: "Fifth. That Hammond had a right under the law to clean up his own bottoms and ditch the same so as to convey off the waters for agricultural purposes; that while a natural water course cannot be obstructed by the land owner so as to back water upon the upper land owner, unless he has an easement either by grant or by prescriptive right, still the law does not give the upper land owner the right to dump his accumulated sand, which is a part of his freehold, upon the lower tenant, and thereby destroy the labor of the lower tenant by using the natural flow of the water to wash his accumulated sand into the ditches of the lower land owner. That if the old channel would not have taken the sand down before Hammond cut his ditches, plaintiff had no right under the law to use the new ditch cut by Hammond to convey her accumulated sand from above. That if the jury find from the testimony that the old creek channel, in the course of time, had become filled with sand before defendant's obstruction until the natural flow of the stream had spread out over the entire bottoms and had no certain channel in which to flow, and Hammond, as a prudent and thrifty farmer, saw proper to improve his own land by cutting ditches to convey this water off his own land below; the fact that he stopped the ditch on his own land and placed a dam there to keep the water from washing from the original channel the sand into the new ditch, does not give the plaintiff any right to damages. *Gray v. Williams*, 21 L. R. A., 593." What is the requirement of our present Constitution—that of 1895—on the subject of Judges' charges upon facts? Art. V., sec. 26, reads as follows: "*Judges shall not charge juries in respect to matters*

11—68

*of fact,* but shall declare the law." The language of the Constitution of 1868, art. IV., sec. 26, is: "Judges shall not charge juries in respect to matters of fact, *but may state the testimony* and declare the law." Thus it appears that the inhibition of the present Constitution precludes Judges from stating the testimony in their charges to the juries. It is permissible for them, in order to make clearer their statement of the law, to make hypothetical statements of facts. But in the present charge the Circuit Judge has stated alleged facts at issue between the parties, and in doing so failed to include any reference to the banks or levees constructed by the defendant, thus giving the defendant the benefit of his charge upon the effect of defendant placing a dam in the ditch cut upon his own land to keep the water from washing from the original channel the sand into the new ditch, and then declaring that in such an event it "does not give the plaintiff any right to damages." This is no hypothetical statement of facts; it is Hammond's case he is discussing. We were very much impressed with the statement of counsel, that it is probable that apart from this statement of the Circuit Judge that the jury would have rendered a verdict in favor of defendant. This is, however, an illustration of the danger of ignoring the requirements of the present Constitution, for it is fatal to the verdict. We are obliged to enforce this provision of the Constitution upon an exception preferred by the plaintiff. The first, second and third exceptions must be sustained.

So, too, exceptions five, six and eight must be sustained, as charges upon the facts were made by the Circuit Judge, as pointed out in these exceptions.

Exception four must be sustained. It was error in the Circuit Judge to hold that the defendant could fight off *flood water* just as he could *surface water,* when it has left the natural channel. Such is not the law. See *Lawton* v. *South Bound R. R.,* 61 S. C., 548, where the late chief Justice McIver pointed out the distinction between *surface water* and *a natural water course,* and

the difference existing in the power of a riparian proprietor in regard thereto. We confine our decision to the case here made.

Exception seven refers to the declaration of law by the Circuit Judge in response to the third request of defendant. He should have included in his charge the whole law on this subject, including the effect of the levees constructed by the defendant on his own land below that of plaintiff. This exception must be sustained.

We must, therefore, order a new trial in this case.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and the action remanded to the Circuit Court for a new trial.